FILED-CLERK
U.S. DISTRICT COURT

04 MAR 12 PM 2:41

TX EASTERN-MARSHALL

BY_____

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| JOSEPH WM. BAILEY, | § |
| | § |
| VS. | § |
| | § CIVIL ACTION NO. 2-03CV - 457 |
| KARREN PRICE, INDIVIDUALLY | § |
| AND ACTING IN HER CAPACITY | § |
| AS DISTRICT ATTORNEY OF | § |
| SHELBY COUNTY, TEXAS | § |

**PLAINTIFF'S AMENDED COMPLAINT
IN RESPONSE TO DEFENDANT'S
MOTION FOR MORE DEFINITE STATEMENT**

**I.**

**PARTIES**

1. Plaintiff, Joseph Wm. Bailey, is an individual who at all time pertinent hereto, was a citizen of the United States of America and a resident of the State of Texas and of Shelby County, Texas.

2. Defendant, Karren Price, is a an individual who is a citizen of the State of Texas and may be served with process at 235 Newman Street, Center, TX 75935.

**II.**

**JURISDICTION**

3. This court has jurisdiction over this lawsuit because this action arises under 42 U.S.C. § 1983 and pursuant to the First and Fourteenth Amendments of the United States Constitution of the United States of America. Plaintiff specifically alleges that

Defendant Price, acting individually and acting in her official capacity as the elected District Attorney of Shelby County, Texas and acting under the color of law did deprive Plaintiff of his constitutional rights to free speech and free association as guaranteed by the afore mentioned statutes of the Constitution.

### III.

### CONDITIONS PRECEDENT

4. All conditions precedent have been preformed and occurred.

### IV.

### FACTS

5. Plaintiff is an attorney duly licensed by the State of Texas and Louisiana. Plaintiff was appointed by the 123rd Judicial District Curt of Shelby County, Texas to represent Rodney Moore. Rodney Moore stood charged by indictment of capital murder in a triple homicide.

6. Defendant, Karren Price, was the District Attorney for Shelby County, Texas and, as such, the prosecutor in this criminal case.

7. Vernon Garrett was anticipated to be a witness for the State against Rodney Moore and Moore's co-defendant, Kenny Boyd. It was expected that Garrett's testimony at Moore's trial would be that Boyd, while in the same cell at the Shelby County Jail with Garrett, confessed to Garrett that he had committed the homicides and implicated Moore.

8. On December 15, 1998 Defendant caused an indictment to be filed by the Shelby County Grand Jury alleging, in pertinent part, that Plaintiff, "On or about the 8th day of June, 1998 ... then and there offer to confer a benefit, to-wit: legal representation

in a criminal charge and guaranteed probation, to Vernon Garrett, who was then and there a prospective witness in an official proceeding... with the intent to influence said Vernon Garrett to testify falsely is said official proceeding ..."

9. On July 13, 1998, Vernon Garret executed an affidavit which served as the basis for a search of the jail cells of Rodney Moore and Kenneth Boyd. Relevant here is the portion of Garrett's affidavit stateing that Boyd told him " ....Rodney shot the little girl with a pillow over her head...."

10. At Moore's trial, Center Police Officer Odell Wiggins, the first officer on the scene to find the girl, testified that he found no evidence of a shot being fired through a pillow or cushion nor was any pillow of that sort found at the scene.

11. The autopsy report of Christy Calhoun, the "little girl", is silent as to any evidence or fabric residue that would have been present had the fatal shot been fired through a pillow.

12. Garrett's statement to Defendant was not supported by the evidence.

13. Garrett was offering his testimony to Defendant in return for a favorable plea agreement from Defendant. He wrote numerous letters to Defendant, her investigator and the jail administrator imploring them to help him out get out of jail and send him to SAFPF. Among these letters were the following:

> April 18, 1998, Garrett wrote Defendant asking for help on his case.
>
> April 21, 1998, Garrett wrote two notes to Goodson telling him that he had information on the capital murder case.
>
> May 11, 1998, Garrett wrote Defendant and investigator T.R. Dugger asking for help on his case.

       May 12, 1998, Garrett wrote two letters to investigator Dugger, one asking for help on his case and the other asking if he could get his case dropped to a misdemeanor so that he could go to SAFPF.

14. Garrett called Plaintiff's law office on June 8, 1998. According to call records kept by Plaintiff's office in the regular course of business, on June 8, 1998, Garrett called Plaintiff's law office twice that day, once at 8:07 a.m. and again at 9:27 a.m., to talk with Plaintiff by phone. It was then, and is now, Plaintiff's policy not to have telephone conversations on jail telephones. Later that day Plaintiff, at Garrett's request, went to the Shelby County jail for Garrett's requested conversation. During this conversation, Plaintiff discussed with Garrett the truthfulness of the statement Garrett made to Defendant regarding Boyd's alleged admission of guilt and implication of Moore in the triple homicides.

15. Also, during this meeting, Garret told Plaintiff that he had been in jail long enough and wanted Plaintiff, the District Attorney, to get him sentenced and send him to SAFPF. Garrett further stated that what he told the Defendant's investigator was the story that was "on the street" about the triple homicide but Garrett, in his statement cited his source for this information as Boyd.

16. Garrett recanted his statement to Plaintiff telling him that he wanted help on his charges, that Defendant was not helping him and that he had been in jail long enough.

17. Plaintiff advised Garrett he could not represent him because of his statement regarding Moore but that he would talk to a lawyer he knew in Carthage, TX to see if he would represent Garrett. Garrett's family was to pay the attorney's fee. Garrett, as evidenced by the continuing theme in his letters to Defendant and her investigator,

was determined to get out of jail and into SAFPF. Plaintiff made no guarantees or offered anything of value to Garrett.

18. On June 12, 1998, Garrett signed an affidavit prepared by Plaintiff according to his prior interview with Garrett. Plaintiff read the affidavit to Garret who signed it in the presence of Plaintiff, Moore' co-counsel Linda K. Russell and Notary Public Brenda Hooper.

19. Plaintiff also audio taped this entire meeting and signing of said affidavit. Defendant has knowledge of this as she was present in Court during Boyd's trial when the audiotape was played and she was furnished a copy of the transcription of said audiotape.

20. At trial, Rodney Moore was found guilty by a jury and sentenced to life in prison. His conviction was reversed on appeal due to the failure of the prosecutor, Defendant herein, to provide Mr. Moore's attorney, Plaintiff herein, with favorable exculpatory evidence that being videotapes of hypnosis session of four witnesses, two of whom were eyewitnesses to one of the homicides.

21. Following Mr. Moore's trial, and prior to the trial of co-defendant Boyd, Defendant caused an indictment to be returned by the Shelby County Grand Jury alleging that Plaintiff committed the criminal offense of Tampering with a Witness, i.e. Vernon Garrett.

22. Defendant Price then offered the testimony of Garrett, known by her to be false, in the Boyd trial in order to secure a conviction of Boyd.

23. On December 20, 2001, criminal charges of Tampering with a Witness as alleged by Defendant to have been committed by Plaintiff were dismissed by a special

prosecutor appointed by the 123rd Judicial District Court of Shelby County, Texas whose investigation found that there was insufficient evidence to proceed.

24. Defendant Price initiated the prosecution of Plaintiff with malicious intent and without credible probable cause.

25. Defendant knew, or should have known, that Garrett, the witness on which she relied to make such criminal charge was not a reliable witness and had recanted his statement by to Defendant letter dated June 13, 1998, a date prior to the filing of said indictment, in which Garrett stated, ".The statement I made to TR (sic) some was true and some of it wasn't. He (Kenny) told me how he heard it happen (sic) and I I wrote it that he said he did it." Garrett asked Defendant to "forgive him" and "take my name off the witness list and I don't want to testify."

26. Defendant Price was fully aware that Plaintiff was acting in his capacity, pursuant to Court appointment, as attorney for defendant Rodney Moore in a criminal trial, in which he had a duty to investigate the case and interview witnesses on behalf of said criminal defendant and in preparation of his defense.

27. Plaintiff was an outspoken critic of Defendant Price's actions and discharge of her official duties as prosecutor during and after the Moore trial. He was quoted in the press and appeared in televised news interviews.

28. Plaintiff alleged and proved that Defendant Price withheld exculpatory evidence in violation of Brady v. Maryland, 373 U.S. 83, 87 (1963) by filing an appeal with the 12th Court of Appeals which reversed Moore's conviction, remanding the case for a new trial, on the failure of the State to provide exculpatory evidence.

29. Plaintiff was prepared to show that Defendant had intended to suborn perjury from

Garrett. Defendant Price's motivation to file groundless and fabricated charges against Plaintiff arose as a result of her decision to conceal her professional misconduct and as a matter of retribution and retaliation against Plaintiff.

30. After the conclusion of the Boyd trial, Plaintiff and Charles Dickerson, attorney for Boyd, were invited to come to the Office of the Attorney General for the State of Texas to review the Shelby County Prosecutor's files in anticipation of a re-trial for Moore. This meeting took place in Austin, Texas on May 9 and 10, 2000 and was attended by Plaintiff, his legal assistant, Judith Bailey, and Cliff Carpenter, on behalf of Mr. Dickerson, investigator for the Boyd case. An examination of the voluminous file, piece by piece, resulted in discovery of additional exculpatory evidence never provided by Defendant. The entire file, including video and audio tapes, was copied by the Attorny General's office and delivered to Plaintiff and to Boyd's attorney.

31. Plaintiff specifically alleges that Defendant Price, acting in her official capacity as the elected District Attorney of Shelby County, Texas did abuse her official duties by indicting Plaintiff for the criminal offense of Tampering with a Witness.

32. Defendant Price, acting individually and in her official capacity as District Attorney of Shelby County, Texas acted intentionally to discredit Plaintiff by damaging his reputation and good name and punish him for performing his duty and obligation to investigate the State's case against his client, Rodney Moore, and exercising his right to free speech and association by interviewing Garrett while he was in the care, custody and control of the State awaiting disposition of the charges against him.

33. Plaintiff would show that the interview of Garrett violated no statute or code of professional conduct, but was in fact an act which was mandated by Plaintiff's duties

as Moore's and in the interest of justice.

34. Plaintiff will show that Defendant Price did fabricate in its entirety a criminal charge against Plaintiff and, acting under color of State law and by means of governmental oppression and harassment, ultimately did cause Plaintiff to be indicted for the criminal offense of Tampering with a Witness.

35. Plaintiff will further show that the charges brought against him are entirely fictitious and are the result of malice and ill will on the part of Defendant Price.

36. As direct and proximate result of defendant's conduct, plaintiff suffered the following injuries and damages:

   a. Lost earnings.

   b. Damage to earnings capacity.

   c. Damage to reputation in the past and future.

   d. Mental anguish in the past and future.

37. It was necessary for Plaintiff to hire the undersigned attorney to file this lawsuit. Upon judgment, plaintiff is entitled to an award of attorney fees and costs under 42 U.S.C. § 1988 (b).

## PRAYER

38. For these reasons, Plaintiff asks for judgment against Defendant for the following:

   e. Actual Damages of $2,000,000.00

   f. Reasonable Attorney Fees.

   g. Prejudgment and post judgment interest.

   h. Costs of suit.

   i. All other relief the court deems appropriate.

Respectfully submitted,

_____
TERRY L. COX
State Bar No. 04956485

LAW OFFICE OF TERRY L. COX
305 W. Rusk
Marshall, Texas 75670
Telephone: (903) 935-1733
Facsimile: (903) 938-7109

ATTORNEY FOR PLAINTIFF
JOSEPH Wm. BAILEY

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument was served on:

Clayton H. Haley
Attorney for Defendant Karren Price
Fairchild, Price, Thomas & Haley, L.L.P.
P. O. Drawer 63168
Nacogdoches, Texas 75963-1668
(936) 569-2327
FAX (936) 569-7932

this 12 day of March, 2004 by one of the following methods: (1) depositing said instrument in a post office or official depository under the care and custody of the United States Postal Service, postage prepaid, certified mail, return receipt requested, or first class mail; (2) telephonic transfer to recipient's current telecopier number; or hand delivered.

_____
TERRY L. COX