**IN THE UNITED STATES DISTRICT COURT
OF THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| **JOSEPH WILLIAM BAILEY** | § | |
| **Plaintiff** | § | |
| | § | |
| **V.** | § | **No.  2:03CV457** |
| | § | |
| **KARREN PRICE, Individually and** | § | |
| **Acting in her Official Capacity as** | § | |
| **District Attorney of Shelby County, Tx.** | § | |
| **Defendant** | § | |

## MEMORANDUM ORDER

Before the Court are Defendant's Motion to Dismiss and for Summary Judgment (Docket Entry # 29) and Defendant's Supplemental Motion to Dismiss and for Summary Judgment (Docket Entry # 35).[1]  The Court, having reviewed the relevant briefing, is of the opinion the motions should be **GRANTED**, and Plaintiff's above-entitled and numbered cause of action should be **DISMISSED WITH PREJUDICE**.

### I.

### FACTUAL BACKGROUND

Joseph William Bailey ("Plaintiff") initiated this lawsuit against Karren Price, Individually and Acting in her Official Capacity as District Attorney of Shelby County, Texas ("Defendant") pursuant to 42 U.S.C. § 1983 and various state law claims, claiming Defendant deprived Plaintiff of his constitutional rights to free speech and free association under the First and Fourteenth Amendments of the United States Constitution.  Plaintiff's claim is based on the allegation that Defendant, while a District Attorney for Shelby County, Texas, allegedly caused Plaintiff to be

---

[1] On January 12, 2005, the above-entitled and numbered cause of action was referred to the undersigned in accordance with 28 U.S.C. § 636(c) and the consent of the parties.

indicted for criminal charges of Tampering with a Witness.

In his Second Amended Complaint ("SAC"), Plaintiff specifically alleges as follows. Plaintiff is an attorney duly licensed by the State of Texas and Louisiana. Plaintiff was appointed by the 123rd Judicial District Curt of Shelby County, Texas to represent Rodney Moore ("Moore") in a capital murder trial.  Defendant was the District Attorney for Shelby County, Texas and, as such, the prosecutor in this criminal case.

Vernon Garrett ("Garrett") was anticipated to be a witness for the State against Moore and Moore's co-defendant, Kenny Boyd ("Boyd"). It was expected that Garrett's testimony at Moore's trial would be that Boyd, while in the same cell at the Shelby County Jail with Garrett, confessed to Garrett that he had committed the homicides and implicated Moore.  On December 15, 1998 Defendant caused an indictment to be filed by the Shelby County Grand Jury alleging, in pertinent part, that Plaintiff, "[o]n or about the 8th day of June, 1998 . . . then and there offer[ed] to confer a benefit, to-wit: legal representation in a criminal charge and guaranteed probation, to Vernon Garrett, who was then and there a prospective witness in an official proceeding . . . with the intent to influence said Vernon Garrett to testify falsely is said official proceeding. . . ." (SAC, ¶ 8).

On July 13, 1998, Garret executed an affidavit which served as the basis for a search of the jail cells of Moore and Boyd.  Garrett's affidavit stated, in relevant part, that Boyd told him "Rodney shot the little girl with a pillow over her head. . . ."  At Moore's trial, Center Police Officer Odell Wiggins, the first officer on the scene to find the girl, testified that he found no evidence of a shot being fired through a pillow or cushion nor was any pillow of that sort found at the scene.  The autopsy report of Christy Calhoun, the "little girl," is silent as to any evidence or fabric residue that would have been present had the fatal shot been fired through a pillow (SAC, ¶ 11).

2

Garrett's statement to Defendant was not supported by the evidence.  Garrett was offering his testimony to Defendant in return for a favorable plea agreement from Defendant. He wrote numerous letters to Defendant, her investigator, and the jail administrator imploring them to help him out get out of jail and send him to SAFPF (SAC, ¶ 13).

Garrett called Plaintiff's law office on June 8, 1998. According to call records kept by Plaintiff's office in the regular course of business, on June 8, 1998, Garrett called Plaintiff's law office twice that day, once at 8:07 a.m. and again at 9:27 a.m., to talk with Plaintiff by phone. It was then, and is now, Plaintiff's policy not to have telephone conversations on jail telephones. Later that day Plaintiff, at Garrett's request, went to the Shelby County jail for Garrett's requested conversation. During this conversation, Plaintiff discussed with Garrett the truthfulness of the statement Garrett made to Defendant regarding Boyd's alleged admission of guilt and implication of Moore in the triple homicides (SAC, ¶ 14).

Also, during this meeting, Garret told Plaintiff that he had been in jail long enough. Garrett further stated that what he told the Defendant's investigator was the story that was "on the street" about the triple homicide but Garrett, in his statement cited his source for this information as Boyd. Garrett recanted his statement to Plaintiff telling him that he wanted help on his charges, that Defendant was not helping him, and that he had been in jail long enough (SAC, ¶ 15).

Plaintiff advised Garrett he could not represent him because of his statement regarding Moore but that he would talk to a lawyer he knew in Carthage, Texas to see if he would represent Garrett. Garrett's family was to pay the attorney's fee.  Garrett, as evidenced by the continuing theme in his letters to Defendant and her investigator, was determined to get out of jail and into SAFPF. Plaintiff made no guarantees or offered anything of value to Garrett (SAC, ¶ 17).

3

On June 12, 1998, Garrett signed an affidavit prepared by Plaintiff according to his prior interview with Garrett. Plaintiff read the affidavit to Garret who signed it in the presence of Plaintiff, Moore' co-counsel Linda K. Russell, and Notary Public Brenda Hooper (SAC, ¶ 18).  Plaintiff also audio taped this entire meeting and signing of said affidavit. Defendant has knowledge of this as she was present in court during Boyd's trial when the audiotape was played, and she was furnished a copy of the transcription of said audiotape (SAC, ¶ 19).

At trial, Moore was found guilty by a jury and sentenced to life in prison.  His conviction was reversed on appeal due to the failure of the prosecutor, Defendant herein, to provide Moore's attorney, Plaintiff herein, with favorable exculpatory evidence, that being videotapes of hypnosis session of four witnesses, two of whom were eyewitnesses to one of the homicides (SAC, ¶ 20).

Following Moore's trial, and prior to the trial of co-defendant Boyd, Defendant caused an indictment to be returned by the Shelby County Grand Jury alleging that Plaintiff committed the criminal offense of Tampering with a Witness, *i.e.* Vernon Garrett (SAC, ¶ 21).  Defendant then offered the testimony of Garrett, known by her to be false, in the Boyd trial in order to secure a conviction of Boyd (SAC, ¶ 22).  On December 20, 2001, criminal charges of Tampering with a Witness as alleged by Defendant to have been committed by Plaintiff were dismissed by a special prosecutor appointed by the 123rd Judicial District Court of Shelby County, Texas whose investigation found that there was insufficient evidence to proceed (SAC, ¶ 23).

Plaintiff alleges Defendant initiated the prosecution of Plaintiff with malicious intent and without credible probable cause (SAC, ¶ 24).  According to Plaintiff, Defendant knew, or should have known, that Garrett, the witness on which she relied to make such criminal charge, was not a reliable witness and had recanted his statement to Defendant by letter dated June 13, 1998, a date

4

prior to the filing of said indictment, in which Garrett stated, "The statement I made to TR (sic) some was true and some of it wasn't. He (Kenny) told me how he heard it happen (sic) and I wrote it that he said he did it." Garrett asked Defendant to "forgive him" and "take my name off the witness list and I don't want to testify." (SAC, ¶ 25).

Plaintiff alleges Defendant was fully aware that Plaintiff was acting in his capacity, pursuant to court appointment, as attorney for defendant Moore in a criminal trial, in which he had a duty to investigate the case and interview witnesses on behalf of said criminal defendant and in preparation of his defense (SAC, ¶ 26).  Plaintiff was an outspoken critic of Defendant's actions and discharge of her official duties as prosecutor during and after the Moore trial. He was quoted in the press and appeared in televised news interviews (SAC, ¶ 27).  According to Plaintiff, Defendant's motivation to file groundless and fabricated charges against Plaintiff arose as a result of her decision to conceal her professional misconduct and as a matter of retribution and retaliation against Plaintiff (SAC, ¶ 29).

After the conclusion of the Boyd trial, Plaintiff and Charles Dickerson, attorney for Boyd, were invited to come to the Office of the Attorney General for the State of Texas to review the Shelby County Prosecutor's files in anticipation of a re-trial for Moore. This meeting took place in Austin, Texas on May 9 and 10, 2000 and was attended by Plaintiff, his legal assistant, Judith Bailey, and Cliff Carpenter, on behalf of Mr. Dickerson, investigator for the Boyd case. An examination of the voluminous file, piece by piece, resulted in discovery of additional exculpatory evidence never provided by Defendant. The entire file, including video and audio tapes, was copied by the Attorney General's office and delivered to Plaintiff and to Boyd's attorney (SAC, ¶ 30).

Plaintiff specifically alleges that Defendant, acting in her official capacity as the elected

District Attorney of Shelby County, Texas, did abuse her official duties by indicting Plaintiff for the criminal offense of Tampering with a Witness (SAC, ¶ 31).  Plaintiff further alleges Defendant, acting individually and in her official capacity as District Attorney of Shelby County, Texas, acted intentionally to discredit Plaintiff by damaging his reputation and good name and punish him for performing his duty and obligation to investigate the State's case against his client, Rodney Moore, and exercising his right to free speech and association by interviewing Garrett while he was in the care, custody, and control of the State awaiting disposition of the charges against him (SAC, ¶ 32).

## II.

### PROCEDURAL BACKGROUND

On January 15, 2004, Defendant filed a Motion for a More Definite Statement .  The Court granted the motion on March 4, 2004.  On March 12, 2004, Plaintiff filed his Amended Complaint in Response to Defendant's Motion for More Definite Statement.  On October 27, 2004, Defendant filed her Second Motion for More Definite Statement.  On March 14, 2005, the Court granted Defendant's Second Motion for More Definite Statement.   Plaintiff filed his Second Amended Complaint on April 20, 2005. The Second Amended Complaint included additional state tort claims including malicious prosecution, abuse of process, intentional infliction of emotional distress, and false imprisonment.

On January 10, 2006, Defendant filed her Motion to Dismiss and for Summary Judgment.  Plaintiff failed to file a response to Defendant's motion within the time prescribed by the Local Rules.  Therefore, on February 6, 2006, the Court ordered Plaintiff to file a response within seven days from the date of entry of the Order.  The Court advised Plaintiff that failure to respond within the time prescribed may result in an Order granting Defendant's motion.  Plaintiff failed to file a

response within the time prescribed.

On February 8, 2006, Defendant filed her Supplemental Motion to Dismiss and for Summary Judgment.  On February 23, 2006, Plaintiff filed a response to Defendant's motion to dismiss and for summary judgment and Defendant's supplemental motion.  The same day, Plaintiff filed a motion for continuance and to consolidate Defendant's motion and Defendant's supplemental motion to dismiss and for summary judgment.  Plaintiff requested the Court consolidate Defendant's motions and extend the deadline for Plaintiff's response to both motions to February 23, 2006.

Defendant responded to Plaintiff's motion, moving to strike.  Defendant asserts Plaintiff has offered no justification for his failure to timely respond to Defendant's first motion as provided by the Local Rules nor has Plaintiff justified his failure to respond to Defendant's motion prior to the Court's ordered deadline.  Defendant states this lawsuit has been pending for over two years, and Plaintiff cannot claim Defendant's motions are premature or that additional discovery is necessary to respond to the motions.

Although the Court agrees with Defendant that Plaintiff's response in opposition to Defendant's dispositive motions was untimely, the Court hereby grants Plaintiff's motion for continuance, extending the response deadline to February 23, 2006.   The Court will consider Plaintiff's response in ruling on Defendant's motions.

### III.  DEFENDANT'S MOTIONS

In her first motion, Defendant moves for summary judgment on each of Plaintiff's claims, asserting she has shown the absence of a genuine issue of material fact by either (1) submitting summary judgment evidence that negates the existence of a material element of plaintiff's claim or (2) showing there is no evidence to support an essential element of plaintiff's claim.  Defendant filed

7

her motion on January 10, 2006.   In her Supplemental Motion to Dismiss and for Summary Judgment filed on February 8, 2006, Defendant asserts numerous additional grounds in support of summary judgment on each of the claims asserted by Plaintiff.   Specifically, Defendant attaches a warrant to secure Plaintiff's arrest, asserting Plaintiff's claim for false imprisonment fails because any "arrest" was pursuant to a valid warrant.   Defendant further contends, in addition to the arguments raised in her first motion, that Plaintiff's claims for false imprisonment and for abuse of process are barred by the statute of limitations.   Finally, Defendant asserts Plaintiff's claim for abuse of process fails because Plaintiff was an attorney.

## IV.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the movant is able to demonstrate that the pleadings, affidavits and other evidence available to the Court establish that there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(C). The movant bears the responsibility of informing the district court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.  *Topalian v. Ehrman,* 954 F.2d 1125 (5th Cir.1992), *cert. denied,* 113 S.Ct. 82 (1992).

In a usual case, the nonmovant is not required to respond to a motion for summary judgment until the movant first meets its burden of demonstrating that there are no factual issues warranting trial.  *Ashe v. Corley,* 992 F.2d 540 (5th Cir.1993).  Once the movant has shown the absence of material fact issues, however, the opposing party has a duty to respond, via affidavits or other means,

asserting specific facts showing that there is a genuine issue for trial. FED. R. CIV. P. 56(e). It is not enough for the party opposing summary judgment to rest on mere conclusory allegations or denials in his pleadings. *Topalian,* 954 F.2d at 1131. The nonmovant must point out, with factual specificity, evidence demonstrating the existence of a genuine issue of material fact on every component of the nonmovant's case. *Dunn v. State Farm & Casualty Co.,* 927 F.2d 869, 872 (5th Cir.1991). If the nonmoving party fails to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof, the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2551, 91 L.Ed.2d 265 (1986). In assessing the proof, the court views the evidence in the light most favorable to the nonmovant. *Matshusita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## V.

## APPLICABLE LAW

Section 1983 provides that any person who, under color of state law, deprives another of "any rights, privileges or immunities secured by the Constitution and laws shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. § 1983. To state a claim under § 1983, Plaintiffs must "(1) allege a violation of rights secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Leffal v. Dallas Ind. Sch. Dist.*, 28 F.3d 521, 525 (5th Cir.1994).

A state prosecuting attorney who acted within the scope of his duties in initiating and pursuing a criminal prosecution is not amenable to suit under 42 U.S.C. §1983. *See Kalina v.*

*Fletcher*, 522 U.S. 118 (1997); *Imbler v. Pachtman*, 424 U.S. 409, 410 (1976); *Brown v. Lyford*, 243 F.3d 185, 191 (5th Cir. 2001)(wherein the prosecutor was granted summary judgment because he was absolutely immune).  "[A]cts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993); *see also Brummett v. Camble*, 946 F.2d 1178, 1181 (5th Cir. 1991)(stating "prosecutors are absolutely immune from liability under § 1983 for their conduct 'in initiating a prosecution and in presenting the State's case,' because that conduct is 'intimately associated with the judicial phase of the criminal process.'")(*quoting Imbler*, 424 U.S. at 430-31).  Moreover, there is "widespread agreement among the Courts of Appeals that prosecutors are absolutely immune from liability under § 1983 for their conduct before grand juries." *Burnes v. Reed* 500 U.S. 478, 490 n.6 (1991).

## VI.

## SUMMARY JUDGMENT EVIDENCE

### A.     Defendant's Summary Judgment Evidence

Defendant attached the following to her first motion to dismiss and for summary judgment: (1) Plaintiff's Original Complaint (Exhibit A); (2) Plaintiff's Second Amended Complaint (Exhibit B); (3) Copy of the Indictment against Plaintiff by a Shelby County Grand Jury for criminal charges of Tampering with a Witness (Exhibit C); (4) Order of Dismissal of the charge (Exhibit D); and (5) Affidavit of  Tim James, the former Criminal District Attorney for Nacogdoches County, Texas (Exhibit E).  Defendant attached the following to her supplemental motion: (1) search warrant (Exhibit Supp-1); (2) arrest sheet (Exhibit Supp-2); (3) December 17, 1998 Order from the Grand Jury Cause No. 98CR-14,930, styled the State of Texas v. William Joseph Bailey (Exhibit Supp-3);

10

(4) copy of band (Exhibit Supp-4); (5) Order Appointing District Attorney Pro Tem dated March 10, 2000 (Exhibit Supp-5); (6) Agreed Scheduling Order in the above-referenced cause of action (Exhibit Supp-6; and (7) Plaintiff's Expert Disclosures (Exhibit Supp-7).

A review of Defendant's summary judgment evidence reveals the following. Plaintiff's claim is based on the allegation that Defendant, Karren Price, while a District Attorney for Shelby County, Texas allegedly caused Plaintiff to be indicted for criminal charges of Tampering with a Witness (Exhibit B). At all times pertinent to the allegations in question, Defendant, Karren Price was the duly elected District Attorney for Shelby County Texas. *Id.* At all times pertinent to the allegations in question, Plaintiff was an attorney, licensed by the State of Texas, who was appointed by the 123rd Judicial District Court of Shelby County, Texas to represent Rodney Moore, an individual who stood charged by indictment of capital murder in a triple homicide. *Id.*

Defendant, as the District Attorney for Shelby County Texas was the prosecutor in the criminal case against Moore. *Id.* As a result of certain activities that occurred in connection with Plaintiff's handling of the Moore case, Plaintiff was indicted by a Shelby County Grand Jury for criminal charges of Tampering with a Witness on December 15,1998 (Exhibit C).

Plaintiff was arrested on December 17, 1998 (Exhibit Supp-2). Plaintiff was released the same day on a personal recognizance bond (Exhibits Supp-3 and Supp-4). The criminal charges were subsequently dismissed on December 20, 2001 (Exhibit D). Plaintiff filed this suit on December 19, 2003 (Exhibit A).

## B.    Plaintiff's Summary Judgment Evidence

Plaintiff did not submit summary judgment evidence with his response. Plaintiff argues summary judgment is improper, asserting there are genuine issues of fact on each element of

11

Plaintiff's cause of action for wrongful indictment for the alleged offense of tampering with a witness. Specifically, Plaintiff argues he had a duty to investigate and interview witnesses on behalf of Moore, and Garrett was listed as a witness provided by Defendant to Plaintiff. Plaintiff contends Defendant fabricated criminal charges against him when Plaintiff was properly acting in his capacity as counsel for Moore in the criminal trial. Plaintiff urges Defendant was "acting as a complaining witness rather than a prosecutor when she presented information to the Grand Jury to obtain an indictment against [him]." Plaintiff's Resp. at pg. 4.

## VII.

### PLAINTIFF'S 42 U.S.C. § 1983 CLAIMS

In the instant case, the acts Plaintiff complains of all involve activities that Defendant engaged in within the course and scope of her duties as the District Attorney of Shelby County. Specifically, Plaintiff complains that "Defendant caused an indictment to be returned by the Shelby County Grand Jury alleging that Plaintiff committed the criminal offense of Tampering with a Witness, i.e. Vernon Garrett." While Plaintiff alleges that Defendant fabricated a criminal charge and caused Plaintiff to be indicted for the criminal offense of Tampering with a Witness as the result of "malice" and "ill-will," the Fifth Circuit has held that absolute immunity "shelters prosecutors even when they act 'maliciously, wantonly, or negligently.'" *Rykers v. Alford*, 832 F.2d 895, 897 (5th Cir. 1987), *quoting Morrison v. City of Baton Rouge*, 761 F.2d 242, 248 (5th Cir. 1985).

In his response, Plaintiff asserts Defendant was acting as a "complaining witness" rather than a prosecutor when she presented information to the Grand Jury to obtain an indictment against him. Plaintiff's assertion is not supported by competent summary judgment evidence. It is undisputed that (1) Defendant was the Shelby County District Attorney at the time the charge was submitted to the

Grand Jury; (2) the case was presented to a Grand Jury; and (3) the Grand Jury returned an indictment against Defendant.  The general rule is prosecutors are immune from liability under § 1983 for their conduct before grand juries.  *Burnes v. Reed*, 500 U.S. 478, 490 n.6 (1991).

In sum, Defendant has presented competent, undisputed summary judgment evidence demonstrating the absence of a genuine issue of material fact.  Plaintiff presented no evidence creating a fact issue on his § 1983 claims.  Because Defendant is entitled to absolute immunity for initiating a prosecution and in presenting the state's case, the Court agrees with Defendant that summary judgment should be granted and Plaintiff's § 1983 claims should be dismissed.

## VIII.

## IMMUNITY

**A.**  **For Plaintiff's state law claims brought against Defendant in her "individual capacity"**

**1.**  **Applicable Law**

A plaintiff may sue a governmental employee or official in the person's official capacity, individual capacity, or both.  It is clear from Plaintiff's petition that Plaintiff has sued Defendant in her individual capacity as well as in her capacity as District Attorney for Shelby County, Texas.  Regarding the individual capacity action, Defendant has asserted the affirmative defense of official immunity. *Wadewitz v. Montgomery*, 951 S.W.2d 464, 465 (Tex. 1997).

"A properly pleaded affirmative defense, supported by uncontroverted summary judgment evidence, may serve as the basis for a summary judgment."  *Albright*, 859 S.W.2d at 578.  If a defendant moves for summary judgment on an affirmative defense, the defendant has the burden to "conclusively prove all the elements of the affirmative defense as a matter of law." *Id.*  "'The non-movant must expressly present to the trial court any reasons seeking to avoid movant's entitlement

13

. . . and he must present summary judgment proof when necessary to establish a fact issue.'" *Id.*, *quoting City of Houstin v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979).

Texas law insulates government officials from the burden of suit as well as from civil liability for damages. *Albright v. Dep't of Human Services*, 859 S.W.2d 575, 579 & n.1 (Tex. App. – Houston [1st Dist.] 1993, no writ)(summary judgment is the appropriate vehicle for deciding qualified immunity, which protects officials from the burdens of litigation as well as from liability). "Government employees are entitled to official immunity from suit arising from performance of their (1) discretionary duties in (2) good faith as long as they are (3) acting within the scope of their authority."*City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex. 1994). To establish a defense of derived judicial immunity, Texas courts have held a defendant must show she is intimately associated with the judicial process and that she exercises discretionary judgment comparable to that of the judge. *Dallas County v. Halsey*, 87 S.W.3d 552, 554 (Tex. 2002).

Courts measure good faith in official immunity cases against a standard of "objective legal reasonableness" without regard to the official's subjective state of mind. *Wadewitz*, 951 S.W.2d at 466; *City of Lancaster v. Chambers*, 883 S.W.2d 650, 656 (Tex. 1994). An official acts in good faith if a reasonably prudent official, under the same or similar circumstances, could have believed that his conduct was justified based on the information he possessed at the time the conduct occurred. *Joe v. Two Thirty Nine Jt.V.,* 145 S.W.3d 150, 164 (Tex. 2004); *Chambers*, 883 S.W.2d at 656.

To prove good faith under this standard, it is not necessary for the defendant to prove she would have been unreasonable had she not acted or that all reasonably prudent district attorneys would have engaged in the same conduct, rather, she must only prove that a reasonably prudent official, under similar circumstances, might have reached the same decision. *Telthorster v. Tennell*,

92 S.W.3d 457, 465 (Tex. 2002). The test is not what a reasonable person would have done, but rather what a reasonable official could have believed. *Id.*

2.      **Discussion**

Here, it is undisputed that Defendant, Karren Price, was a district attorney at the time of the incidents made the basis of this suit. (SAC at pg. 2 ¶ 6). As such she is considered to be a "quasi-judicial" officer. *See Imbler v. Pachtman*, 424 U.S. 409, 422-423 (1976)("The common-law immunity of a prosecutor is based upon the same considerations that underlie the common-law immunities of judges and grand jurors acting within the scope of their duties."); *Hawkins v. Walvoord*, 25 S.W.3d 882, 891 (Tex. App. – El Paso 2000, pet. denied)(county prosecutor entitled to immunity because of quasijudicial status). Moreover, it is clear from Plaintiff's petition that Defendant is being sued because she allegedly "caused an indictment to be filed by the Shelby County Grand Jury" and allegedly "abused her official duties by indicting Plaintiff for the criminal offense of Tampering with a Witness." (SAC at pg. 2 ¶ 8 and pg. 7 ¶ 31). Initiating a prosecution and presenting the State's case are inherently protected activities of a prosecutor. *See Imbler*, 424 U.S. at 421.

Defendant provided the Court with an affidavit from Tim James, a former Criminal District Attorney for Nacogdoches County, Texas and an attorney who is familiar with the documents and witnesses in the underlying capital murder cases.  Mr. James states the decision as to which cases will be presented to the grand jury is a discretionary duty performed by district attorneys; he lists the evidence against Plaintiff at the time Defendant presented Plaintiff's case to the grand jury; and he states it is "clear that [Defendant] acted as a reasonably prudent district attorney with regard to her handling of the case."  (Exhibit E, pgs. 1-2).  The Affidavit of Tim James clearly establishes that

15

Defendant was acting in "good faith" and as a reasonably prudent district attorney with regard to her handling of the criminal case against Plaintiff. Mr. James' affidavit is undisputed evidence that a "reasonably prudent prosecutor could have made the decision to present a case against Mr. Bailey upon the charge of Tampering with a Witness." (Exhibit E, pg. 2). Because Defendant meets all of the qualifying criteria for immunity, Plaintiffs' state law claims against Defendant in her individual capacity are barred and summary judgment in favor of Defendant is proper.

**B.      For Plaintiff's state law claims brought against Defendant in her "official capacity"**

**1.      Applicable Law**

Official capacity suits generally represent a way of pleading an action against an entity of which an officer is an agent. *Turner v. Houma Mun. Fire & Police Civ. Serv. Bd.*, 229 F.3d 478, 483 (5th Cir. 2000). A § 1983 suit naming a defendant in her official capacity does not involve personal liability, and defenses such as absolute quasi-judicial immunity are inapplicable in official capacity actions. *Id.* "[T]he only immunities available to the defendant in an official-capacity action are those that the governmental entity possesses." *Hafer v. Melo*, 502 U.S. 21, 25 (1991).

"In Texas, sovereign immunity deprives a trial court of subject matter jurisdiction for lawsuits in which the State or certain governmental units have been sued unless the State consents to suit." *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004). The Texas Tort Claims Act provides a limited waiver of sovereign immunity. *Id.* Political subdivisions of the state, such as counties, are governmental entities for purposes of sovereign immunity. *See Catalina Dev. V. County of El Paso*, 121 S.W.3d 704, 705 (Tex. 2003). A suit against an official in her official capacity is really a suit against the governmental entity, not the official in her individual capacity. *See Winograd v. Clear Lake City Water Auth.*, 811 S.W.2d 147, 162 (Tex. App.--Houston [1st Dist.]

16

1991, writ denied). Governmental employees in their "official" capacity may raise any defense available to the government unit, including sovereign immunity. *Nueces County v. Ferguson*, 97 S.W.3d 205, 214 (Tex. App. – Corpus Christi 2002, no pet). Although the legislature may waive the county's immunity under certain circumstances, the waiver of sovereign immunity does not apply to intentional torts. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.057(2)(Vernon 1997).

## 2.      Discussion

To the extent Plaintiff has sued Defendant in her official capacity as District Attorney of Shelby County, Texas, Defendant is entitled to sovereign immunity. Each of the claims asserted by Plaintiff are intentional torts and sovereign immunity has not been waived. Tex. Civ. Prac. & Rem. Code Ann. § 101.057(2). Moreover, Plaintiff has failed to plead or provide any evidence that sovereign immunity has been waived in this case. Defendant is entitled to summary judgment on the claims asserted against her in her official capacity.

## IX.

## PLAINTIFF'S INDIVIDUAL STATE LAW CLAIMS

The Court has found Defendant is entitled to immunity regarding Plaintiff's state law claims. Even if the Court had not so found, Plaintiff's individual state law claims also fail on the merits. In this regard, Defendant has provided competent summary judgment evidence indicating Plaintiff's claim for malicious prosecution is barred by applicable statute of limitations. Additionally, Plaintiff has presented no evidence to support his claims for abuse of process or false imprisonment, and Defendant has provided summary judgment evidence negating those claims. Finally, Defendant has also shown she is entitled to summary judgment on Plaintiff's claim for intentional infliction of emotional distress. The Court addresses each state law claim below.

17

a.      **Malicious Prosecution**

Regarding Plaintiff's claims for malicious prosecution, said claims are barred by the statute of limitations. Under Texas law, a malicious criminal prosecution claim must be brought within one year of the date that the criminal prosecution terminates. *See* TEX. CIV. PRAC. & REM. CODE §16.002(a); *Lang v. City of Nacogdoches*, 942 S.W.2d 752, 757 (Tex. App. – Tyler 1997, writ denied). Plaintiff's own pleadings establish that the criminal prosecution in this case ended on December 20, 2001, when the criminal charges of Tampering with a Witness were dismissed. (SAC at pg. 6, ¶ 23). This suit was not filed until December 19, 2003. Plaintiff's claims based on malicious prosecution were clearly barred by the applicable statute of limitations at the time this suit was filed. Therefore, Defendant's motion for summary judgment as to Plaintiff's claims based on malicious prosecution is granted.

b.      **Intentional Infliction of Emotional Distress**

Regarding Plaintiff's intentional infliction of emotional distress claim, the gravamen of the Plaintiff's claim is that his rights were violated when Defendant "abused her official duties by indicting Plaintiff for the criminal offense of Tampering with a Witness." There are no separate acts alleged by Plaintiff that would sustain a wholly separate intentional infliction of emotional distress claim. Under Texas law, "[w]here the gravamen of a plaintiff's complaint is really another tort, intentional infliction of emotional distress should not be available." *Hoffman-La Roche, Inc., v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004).

To recover damages for intentional infliction of emotional distress, a plaintiff must establish that: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the resulting

18

emotional distress was severe. *Id.* at 446. Extreme and outrageous conduct is conduct "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Id.*, *quoting Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993). "Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Hoffman-LaRoche*, 144 S.W.2d at 446.

Plaintiff has failed to provide any credible evidence to support his claim for intentional infliction of emotional distress. Defendant is entitled to summary judgment on Plaintiff's claim for intentional infliction of emotional distress.

### c.    Abuse of Process

Turning to Plaintiff's abuse of process claim, the Court notes abuse of process is the "malicious use or misapplication of process in order to accomplish an ulterior purpose." *Hunt v. Baldwin*, 68 S.W.3d 117, 129-30 (Tex. App. – Houston [14th Dist.] 2001, no pet.). The elements of abuse of process are: (1) the defendant made an illegal, improper, or perverted use of the process, a use neither warranted nor authorized by the process; (2) the defendant had an ulterior motive or purpose in exercising such illegal, perverted, or improper use of the process; and (3) damage to the plaintiff as a result of such illegal act. *Id.*  In Texas, a cause of action for abuse of process occurs where the original process, such as a writ, has been abused to accomplish an end other than that which the writ was designed to accomplish. *Id.* at 130. "In other words, the original issuance of a legal process is justified, but the process itself is subsequently used for a purpose for which it was not intended." *Id.* "When the process is used for the purpose for which it is intended, even though accomplished by an ulterior motive, no abuse of process has occurred." *Id.* "If wrongful intent or

19

malice *caused the process to be issued initially*, the claim is instead one for malicious prosecution." *Id.*, quoting *Bossin v. Towber*, 894 S.W.2d 25, 33 (Tex.App. – Houston [14th Dist.] 1994, writ denied).

Again, Plaintiff has failed to provide any evidence to support any of the elements for his claim of abuse of process. There is nothing in Plaintiff's pleadings to support his claim that the process was misused after it was issued. It appears clear from Plaintiff's pleadings that Plaintiff's claim is actually one for malicious prosecution, not abuse of process.  Thus, because Plaintiff has provided no evidence and cannot establish one or more of the elements of his claim for abuse of process, Defendant's motion for summary judgment regarding Plaintiff's abuse of process claim is granted.

**d.    False Imprisonment**

Finally, regarding Plaintiff's false imprisonment claim, again it is clear that his true claim is one for alleged malicious prosecution. The critical distinction is that malicious prosecution generally lies where the plaintiff was detained pursuant to legal process; false imprisonment, where the plaintiff's arrest was accomplished without process issuing (*e.g.*, without a warrant). *See Heck v. Humphrey*, 512 U.S. 477, 484 (1994). "The common-law cause of action for malicious prosecution . . . unlike the related cause of action for false arrest or imprisonment, . . . permits damages for confinement imposed pursuant to legal process. *Id.* "If there is a false arrest claim, damages for that claim cover the time of detention up until issuance of process or arraignment, but not more." *Id.* (*quoting* W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on Law of Torts 888 (5th ed. 1984).

Here, Plaintiff was "arrested" or "detained" after the indictment and arrest warrant were

returned.  Therefore, since Plaintiff's arrest was accomplished pursuant to legal process, his claim for false imprisonment must fail.  Moreover, Plaintiff has failed to provide any evidence to establish any of the elements of false imprisonment. The elements for a cause of action for false imprisonment are (1) the defendant willfully detained the plaintiff; (2) the detention was without the plaintiff's consent; and (3) the detention was without legal authority or justification. Plaintiff has failed to show the detention was without legal authority or justification. When the plaintiff is arrested or detained by a warrant or subpoena, the arrest or detention is presumed to have been made with legal authority. *Plummer v. Harrison*, 540 S.W.2d 835, 836 (Tex. App. – Texarkana 1976, writ ref'd n.r.e.).  For these reasons, Defendant's motion for summary judgment regarding Plaintiff's false imprisonment claim is granted.  Based on the foregoing, it is

**ORDERED** that Defendant's Motion to Dismiss and for Summary Judgment (Docket Entry # 29) and Defendant's Supplemental Motion to Dismiss and for Summary Judgment (Docket Entry # 35) are **GRANTED**.  It is further

**ORDERED** that Plaintiffs' above-entitled and numbered cause of action is **DISMISSED WITH PREJUDICE.**

**SIGNED this 6th day of March, 2006.**

CAROLINE M. CRAVEN
UNITED STATES MAGISTRATE JUDGE

21